UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**BRENDA ANTEE VISELLI**          CIVIL ACTION NO._____

v.

**RAYMOND JAMES & ASSOCIATES, INC.,**   JUDGE:
**JAMES EDWARD LYONS and**
**THOMAS G. O'BRIEN**                    MAGISTRATE JUDGE:

## ORIGINAL COMPLAINT WITH JURY DEMAND

BRENDA ANTEE VISELLI ("Plaintiff") alleges the following against RAYMOND JAMES & ASSOCIATES, INC. ("Raymond James"), JAMES EDWARD LYONS ("Lyons") and THOMAS G. O'BRIEN ("O'Brien") (Raymond James, Lyons and O'Brien are individually a "Defendant," or, collectively, "Defendants"):

## PARTIES

1.

Plaintiff Brenda A. Antee Viselli is a resident of and domiciled in Lexington, Kentucky.

2.

The Defendants herein are:

1. **RAYMOND JAMES & ASSOCIATES, INC.**  Defendant Raymond James is a Florida corporation with its principal place of business located in St. Petersburg, Florida, and may be served with process through its registered agent for service of process in Louisiana, CT Corporation System;

2. **JAMES EDWARD LYONS.** Defendant Lyons is domiciled in and a resident of Shreveport, Louisiana, and was employed by Raymond James at all times relevant hereto; and

3. **THOMAS G. O'BRIEN.** Defendant O'Brien is domiciled in and a resident of Shreveport, Louisiana, and is the Manager of the Raymond James branch office located at 401 Market Street, Suite 1400, Shreveport, Louisiana and the Raymond James Managing Director, Investments.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims of Plaintiff arise under federal law. Furthermore, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (a) over Plaintiff's ancillary Louisiana state law claims against Defendants.

4.

Venue is proper in the Western District of Louisiana and the Shreveport Division under 28 U.S.C. § 1391 (b)(2) because a substantial portion of the events, actions, conduct and omissions of the Defendants giving rise to the claims of Plaintiff set forth herein arose in this District and Division.

## Factual Background

5.

On or about March 25, 2004, Plaintiff opened and funded two accounts with Morgan Keegan & Company, Inc. ("Morgan Keegan") located at 401 Market Street, Shreveport, Louisiana, using her separate property, an IRA account and the investment account at issue

herein (the IRA account is not at issue in this suit). Plaintiff's broker dealer was Blocker Thornton, an employee of Morgan Keegan, and was the only Morgan Keegan investment adviser with whom Plaintiff dealt.

6.

Plaintiff advised Blocker Thornton and Morgan Keegan that the funds were her separate property and would be needed by her for her retirement and that she needed to avoid "risky" investments. The specific investment goal provided to Morgan Keegan and Blocker Thornton was to seek capital appreciation through investments in companies that had potential for significant growth and to avoid speculative investments having a high degree of risk, volatility and/or trading activity. After specific consultation with Plaintiff, Mr. Thornton recommended to Plaintiff the investment of her savings, approximately $46,591.37, in a variety of funds suitable for Plaintiff and consistent with her investment goals and desires. From the establishment of the account at Morgan Keegan, Plaintiff reaffirmed on numerous occasions with Blocker Thornton the desire to avoid high risk, volatile and speculative investments and Blocker Thornton appropriately advised and handled Plaintiff's funds and accounts in accordance with her investment goals and desires. Over the course of time, until Blocker Thornton's death in 2011, Plaintiff invested additional amounts with Morgan Keegan until at or about the time of Blocker Thornton's death, her account value had grown to more than $300,000.00, the precise highest balance to be obtained during discovery herein.

7.

Following the death of Blocker Thornton in 2011, at a time when Plaintiff then resided in Lexington Kentucky, Morgan Keegan somehow (but without Plaintiff's consent) tapped Lyons to assume control of Plaintiff's account at Morgan Keegan, Account No. 24204885, presumably

under the direction, supervision and control of O'Brien. Unfortunately for Plaintiff, upon taking control of her accounts and in blatant disregard of the satisfactory investment of her funds with Blocker Thornton and in violation of her stated investment objectives and prudent and suitable investment practices, in late 2012 or 2013 (the exact dates of which are to be obtained in discovery), Lyons significantly increased the investment of Plaintiff's funds in highly speculative, volatile and unsuitable energy and energy-related stocks without Plaintiff's consent or knowledge..

8.

Upon information and belief, Lyons did not consult with Plaintiff prior to liquidating her investments and purchasing the highly speculative oil and gas company interests, did not contact or explain to Plaintiff the significant risk associated with such investments, nor did Lyons or O'Brien contact Plaintiff to disclose the fundamental investment risk change from her prior portfolio by the transactions. Further, without the knowledge, consent or permission of Plaintiff, Lyons established a margin trading account for Plaintiff and began engaging in significant margin trading in her account with her investments.

9.

Upon information and belief, and as will be proven at the trial hereof, by 2013, all Defendants knew, or in the exercise of prudent judgment should have known, that oil and gas investments were exceedingly risky investments. Certainly by 2013, in addition to other unpredictable factors, the oil and gas industry in the United States was suffering from lack of demand and overabundance of supply of domestic natural gas and oil and was, and is, an extremely speculative and highly volatile investment in which loss of all or a substantial part of an investor's capital can be lost.

10.

It is believed, and alleged upon information and belief, that until 2012, Morgan Keegan as the employer of Lyons and O'Brien was a controlling party under 15 U.S.C. § 78(t)(a) and other applicable laws.

11.

It is believed, and alleged upon information and belief, that in 2012, Raymond James and Morgan Keegan merged, with Raymond James surviving as the successor to Morgan Keegan. Upon information and belief, Lyons and O'Brien became employees of Raymond James and Plaintiff's account previously held at Morgan Keegan was transferred to Raymond James and given a new account number, 50743188.

12.

It is believed, and alleged upon information and belief, that at all times from and after the merger, Raymond James, as the employer of Lyons and O'Brien, was a controlling party under 15 U.S.C. § 78(t)(a) and other applicable laws.

13.

Further, upon information and belief, O'Brien, as both the Branch Manager and the Managing Director, Investments for Raymond James, was a controlling party under 15 U.S.C. § 78(t)(a) and other applicable laws.

14.

Subsequent to the merger and the assumption by Raymond James of Plaintiff's account at issue herein, Lyons continued the careless, reckless, unsuitable and highly speculative investments, including his illicit margin trading, in highly speculative energy stocks which grossly over-concentrated Plaintiff's account with the energy stocks.  Both Raymond James and

O'Brien failed to monitor, supervise and control the patently illicit trading actions of Lyons. None of the Defendants ever contacted Plaintiff to review, advise or discuss with her whether the investments in her account were in accordance with her investment goals and objectives or to confirm the unilateral decision by Lyons to embark on margin trading within Plaintiff's account.

15.

Compounding the reckless and improper trading of Plaintiff's funds by Lyons as if they were his personal and discretionary accounts, Lyons increased his investment concentration of Plaintiff's funds in the highly speculative energy business without the consent, knowledge or permission of Plaintiff.

16.

As a result of the illicit trading, both in the highly speculative energy stocks and trading on margin without Plaintiff's knowledge or consent, when the investments failed as a result of the bankruptcy of at least one of the equity interests in which Lyons invested, on margin no less, Plaintiff suffered a loss of approximately $300,000, the exact amount of her loss to be proven at the trial hereof.  Upon information and belief, Plaintiff alleges and believes that Lyons, with the full knowledge, consent and permission of O'Brien and Raymond James, engaged in highly unsuitable and highly speculative energy stocks with Plaintiff's funds in order to generate commissions and other financial incentives to Lyons, O'Brien and Raymond James at the expense of Plaintiff and without regard to the desires of Plaintiff and without regard to the damage to Plaintiff of the loss of her funds which she entrusted to Defendants.

17.

Upon contacting Raymond James, Plaintiff was informed that Lyons was no longer handling her account and was unavailable for Plaintiff to contact and that another Raymond

James broker/dealer, Lyons' son, Jeff Lyons, had been handed Plaintiff's account by Raymond James. Plaintiff promptly terminated her relationship with Raymond James and moved her funds to a competent broker in Lexington, Kentucky.

## Count I:  Breach of Duties

18.

Plaintiff hereby adopts all prior allegations in this Complaint and incorporates them in their entirety into this Count.

19.

At all times material hereto, Defendants Raymond James, Lyons and O'Brien were brokers or broker-dealers, within the meaning of securities laws of the United States and the State of Louisiana and, therefore, owed duties to Plaintiff, including, without limitation:

a. the duty to recommend a stock only after studying it sufficiently to become informed as to its nature, price and financial prognosis;

b. the duty to carry out the customer's orders promptly in a manner best suited to the customer's interest;

c. the duty to inform the customer of the risks involved in purchasing or selling a particular security;

d. the duty to refrain from self-dealing;

e. the duty to disclose any personal interest the broker may have in a particular recommended security;

f. the duty not to misrepresent any fact material to the transaction;

g. the duty to transact business only after receiving prior authorization from the customer; and

h.      any and all other duties.

20.

Plaintiff trusted and relied upon Defendants in the management of her savings.

21.

Plaintiff entrusted substantial sums of money to Defendants on the advice and recommendation of Defendants, and paid Defendants substantial fees to manage and monitor the funds in her accounts with reasonable care, competence, and diligence.

22.

Defendants' duties to Plaintiff required them to act at all times in good faith and with fair dealing toward Plaintiff.

23.

Defendants violated their duties to Plaintiff by placing their own financial interests ahead of those of their customer, Plaintiff.  That is evidenced by Defendants' failure to advise Plaintiff of the true risk inherent in the trades effected by Lyons, the fact that those trades were unsuitable to Plaintiff's circumstances and goals, the fact that trades were designed to benefit Defendants at the expense of Plaintiff, and that Defendants' actions or inactions were the only reasons her accounts substantially declined in value, and that Lyons had unintentionally implemented trading "on margin" with Plaintiff's funds.

24.

Consequently, Plaintiff suffered losses which include, but are not limited to, loss of past, present and future investment principal; loss of past, present and future interest on investment principal; loss of opportunity for reasonable return on investments, and other losses and damages for which Defendants are liable, *in solido*.

**Count II: Fraudulent Omissions**

25.

Plaintiff hereby adopts all prior allegations in this Complaint and incorporates them in their entirety into this Count.

26.

As described above, in connection with the purchase or sale of securities in Plaintiff's account, Lyons never consulted Plaintiff and failed to communicate critical facts concerning the risks involved in the trades which Lyons executed in the account. Raymond James and O'Brien failed to monitor or supervise the actions of Lyons and could have prevented the losses sustained by Plaintiff.

27.

Plaintiff is not a sophisticated investor and did not know of the omissions described above or the gross mismanagement of her account by Defendants.

28.

Defendants knew, or in the exercise of reasonable diligence should have known, of the omissions and mismanagement of Plaintiff's account by Lyons.

29.

Plaintiff relied on Defendants' fraudulent omissions and misrepresentations by Defendants to her detriment. Moreover, Defendants profited by omitting the critical information described above in the form of financial incentives, including fees and commissions earned through trading activities, about which Plaintiff was not properly informed.

30.

As a result of the above, Plaintiff suffered losses which include, but are not limited to, loss of past, present and future investment principal; loss of past, present and future interest on investment principal; loss of opportunity or reasonable return on investments, and other losses and damages for which Defendants are liable, *in solido*.

## **Count III: Federal Securities Law Violations**

31.

Plaintiff hereby adopts all prior allegations in this Complaint and incorporates them in their entirety into this Count.

32.

Defendants knowingly, intentionally, and/or recklessly omitted material facts in their handling of Plaintiff's account. In engaging in such conduct, Defendants acted with an intent to deceive, manipulate or defraud or with a reckless disregard for the truth.

33.

By reason of the foregoing, Defendants, directly and indirectly, have violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17. C.F.R. § 240.10b-5, and any other applicable law.

34.

As a result of the above, Plaintiff suffered losses which include, but are not limited to, loss of past, present and future investment principal; loss of past, present and future interest on investment principal; loss of opportunity or reasonable return on investments, and other losses and damages for which Defendants are liable, *in solido*.

### Count IV: Louisiana Securities Law Violations

35.

Plaintiff hereby adopts all prior allegations in this Complaint and incorporates them in their entirety into this Count.

36.

Because the relationship here at issue was that of broker to client, Defendants are also subject to the requirements of Louisiana's securities laws, Louisiana Revised Statutes 51:712 *et seq.*, which require, among other things, full and truthful disclosure of all material facts related to a sale or offer to sell a security and that the broker not engage in any schemes or artifice to defraud related to the sale or offer to sell a security.

37.

As described above, Defendants, in connection with the offer to purchase or sell securities, failed to state material facts necessary in order to make their statements not misleading and intentionally engaged in a scheme to defraud and/or deceive Plaintiff.

38.

Defendants' actions violated Louisiana's securities laws, Louisiana Revised Statutes 51:712 *et seq.* and any other applicable law.

39.

Plaintiff did not know of the untruths and omissions or the scheme to defraud and/or deceive her.

40.

Defendants knew, or in the exercise of reasonable diligence should have known, of the untruths and omissions by Lyons. Had Raymond James and O'Brien properly monitored and

supervised Lyons and followed up periodically with Plaintiff (which they failed to do), Plaintiff's losses would have been avoided.

41.

Plaintiff relied on Defendants' fraudulent misrepresentations or omissions concerning the securities purchased by Defendants to her detriment.

42.

As a result of the above, Plaintiff suffered losses which include, but are not limited to, loss of past, present and future investment principal; loss of past, present, and future interest on investment principal; loss of opportunity or reasonable return on investments, and other losses and damages for which Defendants are liable, *in solido*.

## Count V: Liability of Raymond James

43.

Plaintiff hereby adopts all prior allegations in this Complaint and incorporates them into this Count.

44.

Defendants Raymond James and/or its predecessor Morgan Keegan and O'Brien were at all relevant times herein employer(s) and principals of Lyons and each was a controlling party under 15 U.S.C. § 78(t)(a) and any other applicable law.

45.

The above described wrongful acts and omissions, which caused damages to Plaintiff, were perpetrated by Lyons while in the course and scope of his employment with Raymond James or its predecessor, Morgan Keegan, and under the supervision and control of O'Brien.

46.

As such, Raymond James and O'Brien are responsible for the wrongful acts and omissions of Lyons since they utterly failed to monitor or supervise his actions.

47.

Furthermore, Raymond James and O'Brien each have a duty to Plaintiff to monitor and supervise the actions of Lyons, and they breached that duty.

48.

Upon information and belief, Raymond James and O'Brien, each a controlling party, failed to properly supervise, investigate, monitor, and regulate the actions of Lyons.

49.

Raymond James, a controlling party, failed to create, implement, and enforce procedures to properly supervise, investigate, monitor, and regulate the actions of Lyons, its employee.

50.

Consequently, Plaintiff suffered losses which include, but are not limited to, loss of past, present and future investment principal; loss of past, present and future interest on investment principal; loss of opportunity for reasonable return on investments, and other losses and damages for which Raymond James and O'Brien are liable.

### **Count VI: Louisiana Unfair and Deceptive Trade Practices Act, Louisiana Revised Statutes 51:1401 *et seq*.**

51.

Plaintiff hereby adopts all prior allegations in this Complaint and incorporates them into this Count.

52.

Defendants knowingly and intentionally violated the provisions of the Louisiana Unfair Trade Practices Act (LUTPA) in the offer and sale of the high risk speculative investments to Plaintiff as described above in that Defendants (a) employed a device, scheme and artifice to defraud Plaintiff; (b) engaged in transactions, practices and courses of business which operated as a fraud and deceit on Plaintiff; and (c) engaged in fraudulent, deceptive and manipulative acts, practices and courses of business in soliciting and selling the unsuitable investments to Plaintiff. All of such conduct enriched Defendants and impoverished Plaintiff and resulted in actual, sustained loss by Plaintiff due directly to the fraud, misrepresentation, deception, breach of fiduciary duty and other unethical conduct of Defendants. The conduct of Defendants was immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, including Plaintiff. Consequently, Defendants violated the provisions of the LUTPA, Louisiana Revised Statutes 51:1405 (A).

## Count VII: Bad Faith Breach of Contract

53.

Plaintiff hereby adopts all prior allegations in this Complaint and incorporates them into this Count.

54.

Defendant Lyons represented to Plaintiff that the investments were suitable and appropriate for her expressed investment goals. Based upon the representations and promises of Lyons, Plaintiff contracted with Morgan Keegan, through its duly authorized agent, Lyons, to allow Morgan Keegan, through Lyons, to select and purchase the investments with Plaintiff's funds. Defendants breached the agreement with Plaintiff to use the funds to acquire suitable

investments and instead diverted the Plaintiff's funds to the purchase of the high risk speculative stocks under the fraudulent circumstances set forth above. Defendants breached their agreement with Plaintiff by the knowingly false, and intentionally misleading, promises and representations about the investments and in diverting the funds to the purchase of the unsuitable stocks.

## **DEMAND FOR JURY TRIAL**

55.

Plaintiff requests a trial by jury on all of her claims.

## **Prayer For Relief**

56.

Based on the foregoing, Plaintiff respectfully prays that after due proceedings are had herein, there be Judgment in favor of Plaintiff and against Defendants and award Plaintiff:

1. All damages to which Plaintiff shows herself entitled under the law and the evidence;

2. All costs, fees and expenses incurred in the preparing, filing and prosecution of this action, including reasonable attorneys' fees, investigation costs, and all costs and litigation expenses;

3. Disgorgement of all fees, commissions and bonuses received by Raymond James, O'Brien, and Lyons from Plaintiff or related to the offer of sale and sale of the unsuitable investments described herein; and

4. Award any other relief equitable and appropriate under the circumstances.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC


By: /s/ David R. Taggart
    David R. Taggart
    Louisiana Bar Roll No. 12626

       Ashley G. Gable
       Louisiana Bar Roll No. 35783

401 Edwards Street, Suite 1000
Reception Ninth Floor
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

- - Attorneys for Plaintiff, Brenda Antee Viselli